RICHARD P. MAURO (5402)
43 East 400 South
Salt Lake City, Utah 84111
(801) 363-9500
Attorney for Bryan Jones

FILED
CLERK, U S DISTRICT COURT

2004 DEC 29  P 3: 12

BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | **MEMORANDUM IN SUPPORT OF** |
| Plaintiff, | : | **DISCLOSURE OF INFORMANT INFORMATION** |
| v. | : | |
| BRYAN JONES, | : | Case No.04CR510PGC |
| Defendant. | : | JUDGE PAUL G. CASSELL |

Bryan Jones, through his attorney, Richard P. Mauro, hereby the following memorandum

in support of his motion to compel discovery of informant information.

### STATEMENT OF THE CASE

On 23 July 2004, FBI Special Agent David Williams prepared an affidavit and search

warrant requesting court permission to search Bryan Jones' e-mail accounts. Agent Williams is

assigned to the FBI Field Office in Seattle, Washington. The two e-mail accounts identified in

the search warrant affidavit were:

    1. bryanvjones@hotmail.com, and

    2. bryanvancejones@hotmail.com.

In the affidavit, Agent Williams makes reference to a confidential informant who

contacted an agent Kera Wulbert about possible violations of federal sexual exploitation of

children laws. *See* Williams Affidavit, p.1, par. 2. Specifically, on 14 June 2004, the informant

told agent Wulbert that "he/she [the informant] had physical evidence showing that BRYAN

VANCE JONES was communicating with juvenile females through the Internet." *Id*. p.2, par. 6.

The informant described Mr. Jones to agent Wulbert and identified e-mail accounts used by him.

"The CI claimed to have email evidence showing that JONES had traveled from Washington to

Utah on two occasions to engage in sexual contact with a fifteen year old female. The CI also

stated that he/she believed that JONES intended to travel to Utah for a third time during the third

weekend in July 2004." *Id.* p. 2, par. 7

Additionally, the CI told Wulbert "that JONES possessed digital images of a fourteen

year old female's naked genitals and exposed breasts." Id. p.2, par.8. The CI somehow knew that

the fourteen year old lived in Minnesota and sent pictures of herself over the internet at Mr.

Jones' request. The CI explained to agent Wulbert how and where Mr. Jones accessed the

internet:

> The CI stated that JONES did not own a computer, but rather accessed the Internet
> through computers at public libraries, including the Sumner Public Library, while on
> breaks from his job at Sumner Tractor. The CI stated that JONES has also used the CI's
> computer to access the Internet. The CI explained that the CI has also been able to access
> JONES' email accounts through CI's computer.

Williams Affidavit, p.3, par. 9.

On June 15, 2004, agents Williams and Wulbert met with CI, and received from the CI

"an envelope containing copies of printed email messages from JONES' email account." Id. p.3,

par. 10. The agents reviewed the email messages. The Williams affidavit reprints many of the

email messages that purport to be emails to underage females initiated by Mr. Jones and emails

sent to Mr. Jones, initiated by underage females.

2

Based on the information provided to police by the CI, agents in Salt Lake City discovered the identity of the underage juvenile referenced in the email communications. Williams Affidavit, p.8, par.20. Agents in Salt Lake City interviewed the juvenile who confirmed that several of the email messages were sent by her to Mr. Jones and received by her from Mr. Jones. Id. p.9, par. 20. On July 23, 2004, United States Magistrate Judge Philip K. Sweigert issued a warrant authorizing agents to search Mr. Jones email accounts.

Mr. Jones filed a discovery request specifically requesting copies of all police reports and FBI 302's relating to the search, all information relating to the computer searches, copies of the search warrants and affidavits in support of the search warrants, and information relating to the informant witness who either provided information to police or gave access to the police to conduct the searches in question here. The government responded by a claiming a privilege against disclosure of the informant's identity. *See* Memorandum in Support of Government's Request for a Protective Order.

## I. THE GOVERNMENT SHOULD BE COMPELLED TO DISCLOSE THE IDENTITY OF THE INFORMANT

In some situations, the government has a privilege against the disclosure of certain confidential witnesses who provide information to law enforcement. *Rovario v. United States*, 77 S.Ct. 623 (1957). The privilege is based on the general premise that citizens who provide information to police should not be subjected to possible reprisals and to make the job of law enforcement easier. *Id.* The privilege, however, is not absolute. The courts have identified three circumstances where the privilege is inapplicable:

> 1. Where disclosure of the contents of the communication will not reveal the identity of the informant, the content of that information is not privileged. *Rovario v. United States*,

3

77 S.Ct. 623 (1957)

2. Where the informant's identity has been disclosed to accused, the government no longer has the privilege. *Rovario*, 353 U.S. at 60 n.8;

3. Where disclosure is necessary for defense. *Rovario*, at 60-61("[W]here the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.")

In this case, Mr. Jones has requested both the identity of the informant, and perhaps more importantly, production of FBI 302 reports detailing how the search was conducted, how Mr. Jones' e-mail was accessed, and a description of the relationship between the informant and government agents. Even if the court were to rule that the informant's identity is not discoverable, the reports detailing the circumstances of the search should be discoverable. *See Rovario*, at 60 (contents of communications are oftentimes discoverable without disclosure of informant's identiy). Those details of those communications form the basis of Mr. Jones' motion to suppress the evidence and cannot be obtained through any other source.

Here, the government contends that the informant "did not participate in the illegal transaction . . . ," and therefore, disclosure is not required. That conclusion is erroneous for two reasons. First, it is unclear what role the informant played in transmitting or receiving e-mails. According to the affidavit, the informant somehow accessed Mr. Jones account -- the reason for that access is not explained in the Williams affidavit. Additionally, the informant's search was likely conducted in violation of federal law. *See* 18 U.S.C. § 2511. Moreover, the relationship between the agents and informant is unexplained.

Mr. Jones contends that disclosure is necessary to adequately defend himself. Absent disclosure, Mr. Jones will have no way of determining the legality of the initial e-mail search,

4

whether the informant legally accessed Mr. Jones' secured e-mail accounts, whether the informant was acting as a government agent, and what prior relationship, in any, existed between the agents and the informant.

Mr. Jones asks this court not to grant the government's protective order and to instead order the government to disclose the informant's identity. He also requests that the court grant his motion to compel by ordering the government to provide all reports relating to police contacts with the informant.

Dated this __29__ day of December, 2004.

Richard P. Mauro
Attorney for Bryan Jones

5

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Memorandum in Support of Disclosure of Informant Information was mailed, postage pre-paid, to the following people:

Michelle M. Christiansen
Assistant United States Attorney
185 South State St. Suite 400
Salt Lake City, Utah 84111

Paul G. Amann
Special Assistant United States Attorney
5272 College Drive, Suite 200
Salt Lake City, Utah 84123

this _29_ day of December, 2004.

6